IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01812-PAB-KMT

TERRY VARGAS,

    Plaintiff,

v.

CENTURA HEALTH CORPORATION,

    Defendant.
_____

**ORDER GRANTING SUMMARY JUDGMENT**
_____

This matter is before the Court on defendant Centura Health Corporation's ("Centura") Motion for Summary Judgment [Docket No. 41]. On July 24, 2009, the Court heard oral argument on the motion. After consideration of Centura's motion and reply brief, plaintiff Terry Vargas' response brief, the evidence submitted by each party, and the parties' arguments at the July 24, 2009 hearing, the Court grants Centura's motion for summary judgment.

**I. FACTUAL BACKGROUND**

Ms. Vargas filed this lawsuit alleging claims of workplace discrimination and retaliation under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* Ms. Vargas claims that Centura, through its employees, subjected her to unlawful discrimination and a hostile work environment based on her gender and ultimately fired her in retaliation for complaining of such discrimination. The following facts are undisputed unless otherwise indicated.

Ms. Vargas began working for Centura in March 2000. Def.'s Mot. for Summ. J. ("MSJ"), Ex. A at 26[1]. From March 2000 until March 2005, Ms. Vargas worked in Centura's information technology ("IT") department at its Southern Colorado location in Pueblo, Colorado. MSJ, Ex. A at 26 & Ex. B at 19-21. Over that time period, Ms. Vargas advanced from the position of intern to Data Network Technician, Level II. *Id.* Centura restructured its IT department in March 2005. MSJ, Ex. B at 24-25. As part of this restructuring, Centura eliminated three of fifteen total employment positions in the IT department and required the remaining employees to be proficient in both data and voice networks. *Id.* Centura gave Ms. Vargas the option of relocating to Centura's Northern Colorado location in Denver, Colorado and working in a new position, or taking a severance package and leaving her employment with the Company. MSJ, Ex. A at 33.

Ms. Vargas chose to take the new position in the Denver location. Although the new position involved primarily voice network duties, as opposed to the data network functions with which Ms. Vargas was familiar, she believed that taking the position in Denver was in her best financial interest, presented an "opportunity for career growth," and would be "another feather in [her] cap as far as technology." MSJ, Ex. A at 74-76. Pursuant to this transfer, Ms. Vargas' salary increased approximately $18,000 annually. MSJ, Ex. C at 30. Both before and after the restructuring, Ms. Vargas was the only

---

[1] Plaintiff's response brief is comprised primarily of citations to the transcript of a deposition of Mr. Starr taken during discovery in this case. Plaintiff does not specifically address many of the facts set forth in "Statement of Undisputed Facts" section of Centura's motion for summary judgment. To the extent that Centura's statement of the facts is not contradicted by evidence identified in plaintiff's response brief or at the July 24, 2009 hearing, those facts are deemed admitted by plaintiff and treated as such for purposes of this Order.

female technician in Centura's IT department. Resp. at 3; Def.'s Reply in Supp. of MSJ at 3. Ms. Vargas did, however, work with other female employees at Centura, including analysts and site directors. MSJ at 34-39. Under the restructuring, three male employees were terminated from their positions within the Centura IT department. MSJ, Ex. D at 3.

After transferring to the new position in Denver, Ms. Vargas was assigned to work with Paul Arambula as a trainer. MSJ, Ex. A at 35. For approximately the first month she worked in the new position, she worked most closely with Mr. Arambula and "shadowed" him to learn her new position. *Id.* at 35, 90. Ms. Vargas alleges that during this time period, Mr. Arambula subjected her to sexual harassment. Compl. ¶ 36. Neither plaintiff nor Centura supplies significant detail about this alleged sexual harassment, such as the actual content of the statements or the dates and times statements were uttered or conduct occurred. In her formal charge of discrimination filed with the Colorado Civil Rights Division, plaintiff indicated that the harassment generally consisted of "lewd and explicit comments" relating to plaintiff's figure and attire, which occurred at times from April to June 2005. MSJ, Ex. M at 1.

Ms. Vargas did not immediately report the sexual harassment by Mr. Arambula, but eventually confided the occurrences to another Centura employee that she had worked closely with in Pueblo. Compl. ¶ 39; MSJ, Ex. B at 153. This co-worker then alerted the Vice President of Centura's IT department, Frank Biondolillo. MSJ, Ex. B at 153. Shortly thereafter, in June 2005, Mr. Biondolillo met with Ms. Vargas to discuss Mr. Arambula's conduct. *Id.* Ms. Vargas informed Mr. Biondolillio of the sexual harassment at that time and also complained of harassing behavior in May 2005 by a

co-worker in Denver, Jack Dominguez. *Id.* The incident in question involved a phone conversation between plaintiff and Mr. Dominguez during which Mr. Dominguez swore at plaintiff, using a four-letter word. MSJ, Ex. F at 41. Mr. Dominguez immediately apologized to plaintiff for this utterance and stated that the outburst was the result of him having a broken tooth and working for eleven to twelve hours. *Id.* During Ms. Vargas' meeting with Mr. Biondolillio, Mr. Biondolillio asked her if he should "walk Mr. Arambula out." MSJ, Ex. A at 170-71. Plaintiff understood this to mean that Mr. Biondolillio was prepared to fire Mr. Arambula in light of his inappropriate, harassing behavior. *Id.* at 171. Plaintiff declined because Mr. Arambula was slated to resign his position the following week. Compl. ¶ 42. Regarding the incident with Mr. Dominguez, Mr. Biondolillio informed Mr. Star of the conduct. MSJ, Ex. D ¶ 14. Mr. Star talked to Mr. Dominguez about the incident and verbally reprimanded him for using profanity in speaking to plaintiff. *Id.* ¶ 15; MSJ, Ex. F at 56-57. Plaintiff testified that, other than the May 2005 incident, Mr. Dominguez never swore at her again. MSJ, Ex. A at 222. Similarly, plaintiff never experienced any other "incidents . . . with regard to sexual harassment" once Mr. Arambula left Centura. *Id.*

Aside from the incidents involving Mr. Arambula and Mr. Dominguez, plaintiff claims that she experienced a hostile work environment by virtue of her interactions with her supervisor, Mr. Star, including two written warnings issued by Mr. Star to Ms. Vargas. On July 11, 2005, Mr. Starr issued a written warning to Ms. Vargas describing five instances between May and July 2005 in which she displayed poor teamwork or was deficient in performing voice network related tasks. MSJ, Ex. H. That written warning states that plaintiff displayed a lack of initiative by passing tasks that required

more than basic levels of knowledge about Centura's voice network on to other employees and cautioned that Ms. Vargas needed to display a higher level of competence within a month of the warning. *Id.* On February 20, 2006, Mr. Starr issued a second written warning regarding two instances in which an unidentified Centura employee or employees observed Ms. Vargas arriving at Centura, clocking in to work, and then leaving to park her vehicle and to gather her belongings before starting work at her desk. MSJ, Ex. I. In the warning, Mr. Starr indicated that these incidents constituted improper use of the time clock system and amounted to fraud which, if corroborated or observed again, would be grounds for dismissal. *Id.*

In March 2006, Ms. Vargas was terminated from her employment at Centura. Mr. Star completed a corrective action form discussing the reasons for plaintiff's termination. Specifically, Mr. Starr identified a mishap with a switch replacement project that he had assigned to Ms. Vargas designed, in part, to be "a test of her skills and initiative." MSJ, Ex. J. The switch replacement project involved two physical locations. According to the termination notice, Ms. Vargas successfully oversaw the migration or cut-over to the new switches at one location on the scheduled completion date, but failed to schedule or complete the migration at the other location. *Id.* While Ms. Vargas was terminated following this incident, a co-worker that she was working with on the switch replacement project was not disciplined. Resp. at 8; MSJ, Ex. B. at 101. Mr. Starr's termination write-up also mentioned that Ms. Vargas had not shown an increase in productivity or initiative since the written warning issued in July 2005. MSJ, Ex. J.

Ms. Vargas contends that her termination and the two preceding written warnings amount to discrimination or retaliation against her. She further claims that Mr. Star's

5

behavior towards her was motivated by a discriminatory intent, in that he set her up for failure by assigning her tasks outside of her expertise and then disciplining her for failing to compete such tasks with aplomb. In support of these allegations, plaintiff cites Mr. Starr's deposition testimony concerning her transfer to the Denver location:

> at that point in time [Ms. Vargas], I really believed, was being protected by all of the people down in [the Southern Colorado] region, and I couldn't really get a good read on the work that she was doing, and so I wanted to get her out of that area and really, you know, giver her an opportunity to demonstrate that she had the expertise to continue to thrive in this organization, and so that's why she was offered the position in the north state area.

MSJ, Ex. B at 28. Ms. Vargas also points out that Mr. Starr did not draft a written training plan for her, even though he was aware that her new position in Denver would include responsibilities over voice network tasks that were beyond Ms. Vargas' background or experience. Resp. at 4; *id.* at 42.

Following her dismissal from Centura, Ms. Vargas filed a charge of discrimination with the Colorado Civil Rights Division, seeking redress for alleged discrimination and retaliation based largely on the events described above. In her response brief, plaintiff claims that she "appeared before the EEOC for formal filing on or about March 30, 2006." Resp. at 1-2. In support of this contention, plaintiff submitted a letter from the Denver Field Office of the U.S. Equal Employment Opportunity Commission ("EEOC") dated March 15, 2006 that confirms a March 30, 2006 appointment with the EEOC, advises plaintiff to bring a detailed statement describing the alleged discrimination, and apparently enclosed an intake questionnaire. Resp., Ex. 1. With its motion, Centura submitted a copy of a form "Charge of Discrimination" completed by Ms. Vargas and submitted to the Colorado Civil Rights Division on June 30, 2006. MSJ, Ex. M. Plaintiff

received a mailing from the EEOC dated May 30, 2007 advising her that it was closing its file on her charge and notifying her of her right to sue. Resp., Ex. 2. Plaintiff commenced the instant action on August 28, 2007.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### B. Evaluation of Title VII Claims

Under Title VII, 42 U.S.C. § 2000e-2(a)(1), it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions,

or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Section 2000e-3(a) bans employers from retaliating against an employee because the employee has opposed such unlawful employment discrimination. Ms. Vargas alleges that Centura engaged in unlawful sex discrimination by creating or fostering a hostile work environment and by retaliating against her in violation of Title VII. The Court addresses each of these claims in turn.

### *1. Hostile Work Environment*

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). In order to prove a claim of sex discrimination based on a hostile work environment, "a plaintiff must show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Pinkerton v. Colorado Dep't of Transp., 563* F.3d 1052, 1058 (10th Cir. 2009).

Not all harassment and offensive conduct in the workplace amounts to a hostile work environment under Title VII. *Meritor Savings Bank*, 477 U.S. at 66. Thus, courts evaluate the severity and pervasiveness of the discrimination according to the totality of the circumstances to determine whether the conduct violates Title VII. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). As part of this inquiry, courts consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *O'Shea v. Yellow Tech. Servs., Inc.*,

185 F.3d 1093, 1098 (10th Cir. 1999) (quoting *Harris*, 510 U.S. at 23). "[M]ere utterance of an . . . epithet which engenders offensive feelings in a employee, does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (internal quotation marks and citations omitted). Rather, a hostile work environment is one that a "reasonable person would find hostile or abusive." *Id.* To succeed on a hostile environment sex discrimination claim, a plaintiff may prove harassment that is subjectively and objectively severe under the circumstances. *Smith v. Northwest Financial Acceptance, Inc.*, 129 F.3d 1408, 1413 (10th Cir. 1997). Or a plaintiff may demonstrate that the harassment was so pervasive that the work environment was "permeated with discriminatory intimidation, ridicule, and insult." *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1175 (10th Cir. 1996). "Casual or isolated manifestations of discriminatory conduct, such as a few sexual comments or slurs," does not equate to pervasive workplace discrimination. *Id.*

Conduct that satisfies the severity or pervasiveness requirements but which is not direct towards the plaintiff on the basis of her protected status does not constitute a Title VII violation. *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005). Because "Title VII is not a code of workplace conduct," a plaintiff alleging sex discrimination must produce evidence showing that such discrimination occurred "*because of her gender.*" *Id.* (emphasis in original); *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998). That is not to say that a plaintiff cannot rely on seemingly gender-neutral conduct to prove a hostile environment; such conduct "can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct."

*Chavez*, 397 F.3d at 833 (quoting *O'Shea*, 185 F.3d at 1097). Thus, a plaintiff may defeat summary judgment by presenting evidence of both gender-based and gender-neutral harassment if the fact finder, "viewing the evidence in context, reasonably could view all of the allegedly harassing conduct as the product of sex and gender hostility." *Id.* (alterations omitted).

Centura contends that some or all of Ms. Vargas' complaints of discrimination are time barred because she failed to exhaust her administrative remedies with respect to such claims. "Title VII requires a litigant to file a claim within 300 days of the alleged discriminatory conduct.*"* *Duncan v. Manager, Dep't of Safety, City & County of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir.2005) ("Unlike many other circuits, we have held that a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII-not merely a condition precedent to suit."). Centura reasons that, counting from the date of Ms. Vargas' formal charge filed with the Colorado Civil Rights division – June 30, 2006 – any alleged discriminatory conduct that occurred before September 2, 2005 cannot be considered in this lawsuit pursuant to § 2000e-5(e)(1). It is true that, in general, "each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (internal quotations marks omitted). However, "[h]ostile environment claims are different in kind from discrete acts." *Nat'l R.R. Passenger Crop. v. Morgan*, 536 U.S. 101, 115 (2002). Since "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute

10

one 'unlawful employment practice,'" it follows that a charge is timely if the employee files the charge within 300 days of "any act that is part of the hostile work environment." *Id.* at 117-18.  Assuming that June 30, 2006 is actual date of Ms. Vargas' charge (since she submitted only evidence referring to an earlier filed charge, rather than any substantive evidence of such a charge), her hostile work environment claim is not untimely because the charge was filed within three hundred days of her termination, an act which she claims to be part of the hostile work environment.

Accordingly, "when analyzing a hostile work environment claim spanning longer than 300 days '[a] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice." *Duncan*, 397 F.3d at 1308 (quoting *Morgan*, 536 U.S. at 120).  There must be a sufficient relationship between all the conduct allegedly comprising a hostile work environment to justify the conclusion that such combined conduct constitutes one employment practice.  *Id.*  "[A] series of alleged events comprises the same hostile environment where 'the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'"  *Id.* (alterations omitted) (quoting *Morgan*, 536 U.S. at 120).

Under this standard, Ms. Vargas cannot save the incidents involving Mr. Arambula and Mr. Dominguez by linking them to other allegedly discriminatory conduct that occurred since September 2005.  As a point of reference, the actions that fall into the 300-day window and, thus, are timely include the second corrective action concerning Ms. Vargas' allegedly improper use of the time clock, her final corrective action and termination concerning the mishap in completing a switch replacement

11

project, and alleged requests by Ms. Vargas (that were denied) to be transferred back to Centura's Pueblo, Colorado location in the fall of 2005. Incidents which fall outside of the 300-day window, and are therefore facially untimely, include sexual harassment by Mr. Arambula, verbal harassment by Mr. Dominguez, the first corrective action that plaintiff received in July 2005, and an alleged denial of a vacation request in 2005.

Ms. Vargas has not demonstrated any link between the conduct of her co-workers – Mr. Arambula and Mr. Dominguez – and the employment actions falling within the 300-day window. Ms. Vargas testified that she did not experience any sexual harassment similar to Mr. Arambula's conduct after he resigned from Centura. Thus, the later allegedly discriminatory conduct does not involve the same type of conduct as the earlier harassment. Nor was such conduct "frequent." The same is true with respect to Mr. Dominguez's conduct. Moreover, with one exception, Ms. Vargas attributes the allegedly discriminatory actions falling within the 300-day window to Mr. Star, rather than either Mr. Arambula or Mr. Dominguez. The exception is that Ms. Vargas alleges that Mr. Dominguez was allowed to evaluate her performance and participated in her corrective action following the swearing incident. Compl. ¶¶ 45, 51. Plaintiff, however, presented no evidence to support this contention. On the other hand, Mr. Dominguez testified in his deposition that he is not a manager and never had a chance to evaluate Ms. Vargas. MSJ, Ex. F at 44. While the record shows that Mr. Dominguez did complain about Ms. Vargas' preparation and performance at times, Mr. Starr corroborated Mr. Dominguez's statement regarding evaluations, stating that Mr. Dominguez never participated in corrective actions directed towards plaintiff. MSJ, Ex. D ¶ 27.

Because neither the sexual harassment of Mr. Arambula nor the verbal harassment of Mr. Dominguez can be considered part of a hostile work environment, the question arises as to what evidence plaintiff relies on to establish a hostile environment. Certainly each of the corrective actions, including the final one resulting in Ms. Vargas' termination, are interrelated and can be jointly considered. So too are other allegedly discriminatory actions taken by Mr. Starr relating to Ms. Vargas' conditions of employment. According to Ms. Vargas, these include the denial of her request for two weeks of vacation, failure to allow her to transfer back to Pueblo, Colorado pursuant to her request, and allocating more "on call" time to her than to male IT department employees. As to Ms. Vargas' vacation request (which was made two weeks prior to Ms. Vargas' desired two-week vacation), the evidence shows that, although it was initially denied, the request was ultimately granted. MSJ, Ex. A at 242. Mr. Starr stated that, while he was aware of Ms. Vargas' desire to transfer back to Pueblo, Centura designated no new positions in Pueblo during the time that she worked in Denver nor did she ever submit a formal application to Mr. Star for a new position within Centura in Pueblo. MSJ, Ex. D ¶ 13. Ms. Vargas has not submitted evidence to the contrary. Ms. Vargas' "on call" allegation is also not borne out. Mr. Starr's declaration states that the IT department allows employees to coordinate among themselves concerning their "on call" schedules and that he was not aware of any significant difference between Ms. Vargas' scheduled "on call" time *vis a vis* any other technician. *Id.* ¶¶ 17, 20. Here again, Ms. Vargas has not come forward with any evidence to undermine Mr. Starr's statements.

The remaining issue, then, is whether the evidence concerning Ms. Vargas'

corrective actions and termination is sufficient to withstand summary judgment. It is not. As discussed above, the Tenth Circuit has held that if a jury could reasonably find that all of the allegedly discriminatory conduct – including overtly gender-discriminatory conduct and gender-neutral conduct – was the product of sex and gender hostility, then the case presents genuine issues for trial. The problem here is that Ms. Vargas has not shown *any* overt gender discrimination within the statutory time period. She alleges no off-handed sexual remarks or inappropriate behavior during this time period by Mr. Starr (or anyone else) and identifies no explicit references to her gender in connection with the corrective actions issued by Mr. Starr. Ms. Vargas did establish that she was the only female technician in the Centura IT department during the relevant time period. But Mr. Starr testified that over his tenure as a supervisor with hiring and firing authority, he does not recall receiving applications for IT technicians from female applicants. MSJ, Ex. B. at 51. Ms. Vargas has not offered any evidence to the contrary. Moreover, the Supreme Court has made clear that statistical evidence about a particular workforce is of limited utility, since "[i]t is completely unrealistic to assume that unlawful discrimination is the sole cause of people failing to gravitate to jobs and employers in accord with the laws of chance." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 992 (1988).

      Viewing all the evidence in the light most favorable to Ms. Vargas, she has not shown that she was discriminated against on the basis of sex or that any alleged discrimination was sufficiently severe or pervasive so as to alter the terms or conditions of her employment.

### *2. Retaliation*

"To establish a prima facie case of retaliation, [plaintiff] must show that (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her opposition and the employer's adverse action." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006)).  In this case, the third prong – a causal nexus – is dispositive and I need not engage in the burden shifting analysis utilized under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), when a plaintiff establishes a prima facie case of retaliation.

The only instance of Ms. Vargas engaging in protected opposition to discrimination that is supported by the record is her disclosure of Mr. Arambula's sexually harassing behavior to Mr. Biondolillio.  *See Crawford v. Metropolitan Gov't of Nashville & Davidson County*, 129 S.Ct. 846 (2009) (defining "opposition" for purposes of Title VII).  "A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001); *see also Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007).  Plaintiff does not present evidence of a close temporal connection between her protected conduct and subsequent adverse employment actions.  To the extent that Ms. Vargas claims the first corrective action in July 2005 was a retaliatory act, that claim is time barred.  As discussed previously, plaintiff has not demonstrated that she exhausted her administrative remedies on such claim by filing a charge with the EEOC within 300 days

of July 2005.  *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002) ("because failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that she did exhaust").  Neither the second corrective action nor Ms. Vargas' termination is close enough in time to her complaint of sexual harassment to give rise to an inference of causation.  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("a three-month period, standing alone, is insufficient to establish causation").  Absent a "very close" temporal connection, Ms. Vargas "must offer additional evidence to establish causation."  *O'Neal*, 237 F.3d at 1253.  Plaintiff has not proffered any evidence, however, linking her complaint to Mr. Biondolillio to the later corrective actions and her termination.  That is, she has not shown any plausible connection between Mr. Starr's awareness of her report of sexual harassment and his issuance of a corrective action for improper use of the time clock or his termination of Ms. Vargas' in connection with the delayed completion of the switch replacement project.  Therefore, plaintiff has not demonstrated a prima facie case of retaliation.

## III.  CONCLUSION

In sum, plaintiff has not come forward with sufficient evidence of gender discrimination, sexual harassment, or retaliation to withstand summary judgment.  In terms of evidence of workplace misconduct directly implicating plaintiff's gender, she has identified what amounts to only isolated incidents of off-hand comments and sexually harassing behavior which, when brought to the attention of plaintiff's supervisors, was promptly addressed to plaintiff's satisfaction.  Since there is no

evidence of gender discrimination or sexual harassment that permeated plaintiff's workplace, her remaining complaints of being subject to one offensive (but not gender-related) comment and to disciplinary actions are insufficient to comprise a case of unlawful sex discrimination.  Title VII proscribes only unlawful discrimination, it does not set forth a "general civility code for the American workplace." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998).  Further, plaintiff has failed to show any nexus between her termination and her disclosure of the isolated incidents of sexual harassment of which she complaints.  Accordingly, it is

**ORDERED** that defendant Centura Health Corporation's motion for summary judgment [Docket No. 41] is GRANTED.  It is further

**ORDERED** that this matter, and all claims asserted therein, is dismissed with prejudice.  The Clerk shall forthwith enter judgment in favor of defendant Centura Health Corporation and against plaintiff Terry Vargas.  Defendant is entitled to its costs. *See* D.C.COLO.LCivR 54.1; Fed. R. Civ. P. 54(d)(1).

DATED August 13, 2009.

                                                    BY THE COURT:

                                                   s/ Philip A. Brimmer
                                                   PHILIP A. BRIMMER
                                                   United States District Judge